TREBESCH V. MORRIS

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-02-322-CV

PAT TREBESCH AND APPELLANTS

NANCY TREBESCH 

V.

MICHAEL MORRIS AND APPELLEES

BELINDA MORRIS 

------------

FROM THE 141ST DISTRICT COURT OF TARRANT COUNTY

------------

OPINION

------------

Appellants Pat and Nancy Trebesch agreed to sell a racehorse to Appellees Michael and Belinda Morris.  After Appellees paid a portion of the purchase price, Appellants sold the horse to another buyer.  Appellees sued for the return of their money, alleging breach of contract and conversion.  The trial court granted summary judgment in Appellees’ favor, awarded attorneys’ fees, and severed Appellants’ counterclaim.  We affirm the trial court’s judgment.

Background

The parties agree that in March 2000, Appellants orally contracted to sell Appellees a racehorse, “I’m Too Impulsive,” for $30,000.  The parties further agree that Appellees paid Appellants $20,000 and that the horse was to be delivered to Appellees in July 2000, at which time the balance of the purchase price was due.  It is undisputed that in July the deal between the parties fell through, and four or five days later Appellants sold the horse to another buyer for $35,000.  Appellants refused to return Appellees’ $20,000, resulting in this lawsuit being filed by Appellees.   

Appellants filed a counterclaim alleging they were damaged by a letter written by Appellees on February 14, 2001 to the American Paint Horse Association attacking the personal character of Appellant Pat Trebesch because of the transaction involving “I’m Too Impulsive.” 

In three issues on appeal, Appellants contend:  there was a material fact regarding whether the contract was an earnest money contract, permitting Appellants to keep the money paid by Appellees; by not requesting attorneys’ fees in Appellees’ motion for summary judgment or submitting proof with the motion, Appellees waived their claim for attorneys’ fees; and the motion to sever Appellants’ counterclaim was improperly granted because the issues in the counterclaim were intertwined with Appellees’ suit.   

 
 
Was The $20,000 Non-refundable Earnest Money?

In their first issue, Appellants assert there was an issue of fact raised as to which party breached the contract and whether the contract was an earnest money contract that would permit Appellants to retain the $20,000.

In a summary judgment case, the issue on appeal is whether the movants met their summary judgment burden by establishing that no genuine issue of material fact exists and that the movants are entitled to judgment as a matter of law.  
Tex. R. Civ. P.
 166a(c); 
S.W. Elec. Power Co. v. Grant, 
73 S.W.3d 211, 215 (Tex. 2002); 
City of Houston v. Clear Creek Basin Auth.
, 589 S.W.2d 671, 678 (Tex. 1979).  The burden of proof is on the movants, and all doubts about the existence of a genuine issue of material fact are resolved against the movants.  
S.W. Elec. Power Co., 
73 S.W.3d at 215;
 Rhone-Poulenc, Inc. v. Steel,
 997 S.W.2d 217, 223 (Tex. 1999); 
Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.
, 391 S.W.2d 41, 47 (Tex. 1965).  Therefore, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovants.  
Great Am.
, 391 S.W.2d at 47.

Appellants’ brief provides no discussion or analysis regarding their statement that the evidence raised an issue of fact as to which party breached the contract, nor do Appellants direct this court to any evidence in the record raising an issue regarding which party breached the contract, nor do they further brief their contention. 
 For an issue to be properly before this court, the issue must be supported by argument and authorities and must contain appropriate citations to the record.  
See 
Tex. R. App. P.
 38.1(h); 
Knoll v. Neblett
, 966 S.W.2d 622, 639 (Tex. App.—Houston [14
th
 Dist.] 1998, pet. denied).  We are not required to search the record, with no guidance from Appellants, to see if an issue of material fact was raised by the record.  
See
 
Hall v. Stephenson
, 919 S.W.2d 454, 466-67 (Tex. App.—Fort Worth 1996, writ denied).  Thus, an inadequately briefed issue may be waived on appeal.  
Id
. at 467; 
see also Fredonia State Bank v. Gen. Am. Life Ins. Co.
, 881 S.W.2d 279, 284 (Tex. 1994) (discussing “longstanding rule” that point may be waived due to inadequate briefing).
 
Accordingly, we do not further consider this complaint. 
 See
 
Fredonia
, 881 S.W.2d at 284; 
TXO Prod. Co. v. M.D. Mark, Inc
., 999 S.W.2d 137, 143 (Tex. App.—Houston [14
th
 Dist.] 1999, pet. denied).

With regard to whether the $20,000 was a refundable deposit or non-refundable earnest money, Appellants contend that Appellant Nancy Trebesch’s deposition testimony that the $20,000 was “like earnest money” established that Appellants were entitled to retain the $20,000 as damages.

A review of the summary judgment evidence reveals the following testimony concerning the $20,000:

[Deposition of Appellant Nancy Trebesch:]

Q. Were the Morrisses ever advised by you or your husband that their deposit on the horse would be nonrefundable?

A. It really wasn’t a deposit.  No, I guess the question would be -- the answer would be no.

Q. What was the $20,000?

A. Partial payment for the horse.  It was -- actually, what it was is, we call it -- and what we told them -- I’m trying to think how you put this -- it was like earnest money.

Q. There was no agreement between you all and the Morrises that you would keep earnest money in the event that the sale didn’t go through?

A. No discussion, no.

Q. You all just did that?

A. That’s customary in our -- in our business.

Q. To keep it?

A. Yes.

Q. To keep $20,000?

A. If they -- if they breached a contract, yes.  

[Deposition of Appellant Pat Trebesch:]

Q. Did the contract provide that you could keep any monies paid to you?

A. No sir.

Q. Did you ever tell them that their deposits would be nonrefundable?

A. No, sir.

Q. There was no such agreement like that, was there?

A. No, sir.

Q. Why, then, did you keep the money?

[Appellants’ Counsel]: Objection as to form.

A. Because of the verbal contract that their loss-of-use insurance was supposed to be paid and I was supposed to be paid up front.

Q. And this entitled you to keep $20,000?

A. Yes, sir.

Viewing the summary judgment evidence in the light most favorable to Appellants, we conclude that the testimony relied upon by Appellants does not raise a genuine issue of material fact concerning whether the contract between the parties provided that the $20,000 paid by Appellees was non-refundable  earnest money.  We overrule Appellants’ first issue.   

Attorneys’ Fees

In their third issue, Appellants contend Appellees waived their right to attorneys’ fees because their motion for summary judgment did not properly request attorneys’ fees and no summary judgment evidence was presented in support of any claim for attorneys’ fees.

Procedural history

In their original petition, Appellees specifically sought attorneys’ fees under section 38.001 of the Texas Civil Practice and Remedies Code.  
Tex. Civ. Prac. & Rem. Code Ann. 
§ 38.001(8) (Vernon 1997).
(footnote: 1)
 Appellees’ motion for summary judgment contends Appellants had no contractual right to retain Appellees’ advance payment and Appellees are entitled to judgment as a matter of law.  In closing, Appellees “pray for judgment against Defendants, 
including attorneys’ fees
 and for any further relief to which they may be entitled.” [Emphasis added.]  Attached to Appellees’ motion were excepts from Appellants’ depositions.  These excerpts pertained to Appellees’ breach of contract claim.  There was no summary judgment evidence relating to Appellees’ claim for attorneys’ fees. 

Appellants filed a summary judgment response attempting to show why Appellees had not established their breach of contract claim as a matter of law. Appellants’ response does not mention any claim by Appellees for attorneys’ fees.

On May 16, 2002, the trial court granted Appellees’ motion for summary judgment.  The order simply granted the motion, it does not contain any decreetal language ordering Appellants to pay any sum of money to Appellees, nor does the order mention Appellees’ claim for attorneys’ fees or Appellants’ counterclaim for damages.  The order did not contain a “Mother Hubbard” clause that purported to dispose of all issues in the lawsuit, nor did the order recite that it was a final judgment.

On May 30, 2002, Appellees filed an application for attorneys’ fees and a motion to sever Appellants’ counterclaim from the claim of Appellees.  In the application for attorneys’ fees, Appellees claimed that because the court had ruled in their favor on their breach of contract claim, Appellees were entitled to attorneys’ fees pursuant to section 38.001(8).  Attached to the application for attorneys’ fees was an affidavit from Appellees’ attorney stating the extent of his work in this case and that $12,228 was the amount of reasonable and necessary attorneys’ fees for Appellees to recover as a result of Appellants’ breach of contract.

On August 2, 2002, Appellants filed a response to Appellees’ application for attorneys’ fees and a response to Appellees’ motion to sever.  The trial court held an evidentiary hearing on Appellees’ application for attorneys’ fees and motion to sever.  Appellees’ attorney testified regarding his attorneys’ fee claim, and Appellants reiterated their argument that Appellees had waived their claim for attorneys’ fees because Appellees’ pleadings did not seek attorneys’ fees, and Appellees’ motion for summary judgment did not attach proof of Appellees’ entitlement to attorneys’ fees.

On August 14, 2002, the trial court signed a “Final Judgment” awarding  Appellees $20,000 in damages, pre- and post-judgment interest, and $12,228 in attorneys’ fees.  On the same day, the court signed a separate order granting Appellees’ motion to sever.

Were attorneys’ fees a ground in Appellees’ motion for summary judgment?

Summary judgment cannot be granted except on the grounds expressly presented in the motion.  
Johnson v. Brewer & Pritchard, P.C., 
73 S.W.3d 193, 204 (Tex. 2002); 
Sci. Spectrum, Inc. v. Martinez,
 941 S.W.2d 910, 912 (Tex. 1997).  In determining whether grounds are expressly presented, reliance may not be placed on briefs or summary judgment evidence.  
McConnell v. Southside Indep. Sch. Dist.
, 858 S.W.2d 337, 341 (Tex. 1993).  The purpose of this requirement is to provide the opposing party with adequate information for opposing the motion and to define the issues or points for the purpose of summary judgment.  
Westchester Fire Ins. Co. v. Alvarez
, 576 S.W.2d 771, 772 (Tex. 1978), 
overruled on other grounds by City of Houston v. Cleak Creek Basin Auth.
, 589 S.W.2d 671, 678 (Tex. 1979);
 Camden Mach. & Tool, Inc. v. Cascade Co.
, 870 S.W.2d 304, 309-10 (Tex. App.—Fort Worth 1993, no writ).

Although Appellees’ prayer in their motion for summary judgment seeks judgment against Appellants “including attorneys’ fees,” we conclude that Appellees’ claim for attorneys’ fees was not actually a ground listed
 in the motion for summary judgment.  The motion addressed Appellees’ breach of contract claim and put Appellants on notice that Appellees were seeking summary judgment on that ground.  The mere mention of attorneys’ fees in the prayer would certainly not be sufficient to put Appellants on notice that attorneys’ fees were a ground being sought by the motion, and in fact Appellants’ response in no way addressed the attorneys’ fee issue.  We hold  that because Appellees’ motion for summary judgment did not involve Appellees’ claim for attorneys’ fees, the trial court did not abuse its discretion in subsequently holding an evidentiary hearing on Appellees’ application for attorneys’ fees and in awarding attorneys’ fees to Appellees.  We overrule Appellants’ third issue.      

Severance

In their second issue, Appellants contend the trial court abused its discretion in severing Appellants’ counterclaim from the claims of Appellees.  Appellants’ position is that their counterclaim was so intertwined with Appellees’ claims that it constituted a compulsory counterclaim and severance of their compulsory counterclaim was an abuse of discretion.  Appellees claim the counterclaim was permissive and severance was proper under the guidelines of Rule 41.  
Tex. R. Civ. P. 
41 (stating “actions which have been improperly joined may be severed” and “[a]ny claim against a party may be severed and proceeded with separately”).   

A severance splits a single suit into two or more independent actions, each action resulting in an appealable final judgment.  
Van Dyke v. Boswell, O'Toole, Davis & Pickering
, 697 S.W.2d 381, 383 (Tex. 1985).  Severance of claims under the Texas Rules of Civil Procedure rests within the sound discretion of the trial court.  
Liberty Nat’l Fire Ins. Co. v. Akin
, 927 S.W.2d 627, 629 (Tex. 1996) (orig. proceeding).
(footnote: 2)  A claim is properly severable if (1) the controversy involves more than one cause of action, (2) the severed claim is one that would be the proper subject of a lawsuit if independently asserted, and (3) the severed claim is not so interwoven with the remaining action that they involve the same facts and issues.  
Guar. Fed. Sav. Bank v. Horseshoe Operating Co.
, 793 S.W.2d 652, 658 (Tex. 1990) (op. on reh’g).  The controlling reasons for a severance are to do justice, avoid prejudice, and further convenience.  
Id.

Appellants contend their counterclaim is compulsory and therefore the trial court abused its discretion in severing the counterclaim from the claims of Appellees. A counterclaim is compulsory if “it arises out of the transaction or occurrence that is the subject matter of the opposing party’s claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.”  
Tex. R. Civ. P. 
97(a).

There is a split in the courts of appeals regarding whether an order severing a compulsory counterclaim will automatically constitute an abuse of discretion.  
Compare Rucker v. Bank One Tex., N.A.
, 36 S.W.3d 649, 651 (Tex. App.—Waco 2000, pet. denied); 
Goins v. League Bank & Trust
, 857 S.W.2d 628, 630 (Tex. App.—Houston [1
st
 Dist.] 1993, no writ); 
and Mathis v. Bill De La Garza & Assocs.
, 778 S.W.2d 105, 106-07 (Tex. App.—Texarkana 1989, no writ) (all holding that severance of a compulsory counterclaim is an abuse of discretion), 
with In re Occidental Permian Ltd.
, No. 07-03-0016-CV, slip op. at 4, 2003 WL 1799012, at *2 (Tex. App.—Amarillo April 7, 2003, orig. proceeding [pet. for mandamus filed]) (holding that so long as trial court abides by Rule 41 it is not error to sever and proceed separately with compulsory counterclaim); 
see also Hart v. Attorneys-At-Law
, No. 01-97-890-CV, 1999 WL 2391, *6 (Tex. App.—Houston [1
st
 Dist.] Dec. 30, 1998, no pet.) (not designated for publication) (disagreeing with argument that severance of compulsory counterclaim was abuse of discretion and applying criteria of Rule 41).
(footnote: 3)
 Occidental
 recognizes the split among the circuits, but states it is bound by the holding of the Texas Supreme Court in 
McGuire v. Commercial Union Ins. Co.
, 431 S.W.2d 347, 350-51 (Tex. 1968).  
Occidental
, slip op. at 4, 2003 WL 1799012, at *2 n.2.
(footnote: 4)  In 
McGuire
, the court citing Rule 41 held that it “is not necessary to determine whether or not the McGuire claim was, in fact, a compulsory counterclaim, since the trial court had the discretionary power to sever the McGuire claim.”  
McGuire
, 431 S.W.2d at 351.  In 
Cherokee Water Co. v. Forderhause
, the court of appeals held that a counterclaim was compulsory in nature and was improperly severed.  641 S.W.2d 522, 523-26 (Tex. 1982).  Without further discussion regarding the nature of the counterclaim, the supreme court applied the criteria of Rule 41 and 
McGuire
 regarding appropriateness of the severance, and reversed the court of appeals.  
Id.
 at 525-26. 

We conclude that we need not determine the nature of Appellants’ counterclaim, but we must apply the criteria of Rule 41 and 
Guaranty Federal Saving Bank
, 793 S.W.2d at 658. 

In their counterclaim, Appellants alleged causes of action for defamation, business disparagement, malicious civil prosecution, and malicious criminal prosecution.  These causes of action all arose out of a letter sent by Appellees on February 14, 2001 to the American Paint Horse Association attacking the personal character of Appellant Pat Trebesch because of the transaction involving “I’m Too Impulsive.”

Appellees’ breach of contract and conversion claims against Appellants culminated in July 2000 when Appellants sold the horse to a third party and refused to return Appellees’ $20,000.  Appellants’ counterclaim did not arise until February 2001 when Appellees sent their letter to the American Paint Horse Association.  We hold that these two claims involve two separate causes of action, each of which would be the proper subject of a lawsuit if independently asserted, and that the claims are not so interwoven as to involve the same facts and issues.  Accordingly, the trial court did not abuse its discretion in severing Appellants’ counterclaim from the remainder of the case.  We overrule Appellants’ second issue.

Conclusion

Having overruled all of Appellants’ issues on appeal, we affirm the judgment of the trial court.

DIXON W. HOLMAN

JUSTICE 

PANEL A: CAYCE, C.J.; HOLMAN and GARDNER, JJ.

DELIVERED: August 21, 2003

FOOTNOTES
1:
“A person may recover reasonable attorney’s fees from an individual
 . . ., in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract.”  

2:
A trial court abuses its discretion when it acts without reference to any guiding rule or principle or acts arbitrarily or unreasonably.  
Downer v. Aquamarine Operators, Inc.
, 701 S.W.2d 238, 241-42 (Tex. 1985).

3:
“O
pinions not designated for publication by the court of appeals under these or prior rules have no precedential value but may be cited with the notation, ‘(not designated for publication).’”  
Tex. R. App. P. 47.7.

4:
The court in 
Occidental
 discussed the fact that the test applied when determining the validity of a severance differs from the test applied when assessing whether a counterclaim is compulsory.  The court noted that “the test used in determining whether a matter should be joined as a compulsory counterclaim is much more liberal in scope than that used to assess the validity of a severance.”  
Occidental
, slip op. at 4, 2003 WL 1799012, at *2 n.2.